CHASEZ, Judge.
Paul Mitchell claims maximum workmen’s compensation benefits from the Travelers Insurance Company, insurer of his employer, the Louisiana Coca-Cola Bottling Co., Ltd. Plaintiff alleged:
“Petitioner further avers that while in the course and scope of his employment as a truck helper by the said Louisiana Coca Cola Bottling Company, Ltd. that on or about 14 March, 1962 he was feeding dirty coca cola bottles into a machine when an unknown object flew into his right eye, injuring same.”
Defendant answered admitting that plaintiff did on or about March IS, 1962, report to his said employer that he sustained an accident the preceding day, but averred that on the basis of an examination by *825 Dr. Robert E. Schoel, eye specialist, performed the same date, that is, March IS, 1962, that plaintiff’s injuries as found by Dr. Schoel could not possibly have resulted from the accident which plaintiff alleges herein and, therefore, that the injury of which plaintiff complains herein is not a result of or in any way related to the alleged accident of March 14, 1962, and his injury is thus not compensable not having occurred during the course and scope of plaintiff’s employment.
Plaintiff’s testimony at the trial was that some liquid from a dirty bottle fell into his eye as he was lifting the cases of bottles from a high stack.
Plaintiff produced no medical testimony. Defendant produced the testimony of three ophthalmologists, who were unanimous in the firm opinion that plaintiff’s alleged injuries to and the blindness in his right eye could not have been caused by any liquid or other debris falling into his eye nor by any rubbing of his eye.
Dr. Robert E. Schoel, the doctor who examined plaintiff the day following the liquid-spilling incident, testified, as follows:
<< iji * * J{c sji ‡
“Q. Upon examination what, if anything did you find?
“A. I found he had evidence in the skin of the lid of an ecchymosis or breaking of the lid of the right eye. There was some bleeding in the cavity—
“Q. Let me interrupt you Doctor. By ecchymosis or bleeding under the skin, is that what a layman would refer to as a shiner ?
“A. Yes, there was also swelling of the lids. I found evidence of iridocyclitis, that is evidence of inflammation in the front part of the eye. When we checked him with the flare lamp which has been mentioned previously there was evidence of that in the right eye. There was evidence of paralysis of the third corneal nerve to the right eye.
“Q. Doctor, now, I ask you would the ocular motor, corneal nerve paralysis, the iridocyclitis be indicative of a traumatic injury?
“A. Yes, they can be.
“Q. Can be?
“A. It was my opinion' — -the eye appeared that it had been severely injured.
“Q. Doctor, was the man blind when you examined him?
“A. Yes, he was, the right eye.
* * * * * *
“Q. Did you see any evidence that there had been any foreign substance in the eye ?
“A. There was a small, slight spot on the cornea which was attributable to a foreign substance or it could have been attributable to a blow.
“Q. Could that have caused these other five findings?
“A. No.
******
“Q. Doctor, could you, at that time, reconcile what you find with the manner in which the patient said he was injured?
“A. I could not say the evidence of severe injury he had could have been caused by the rather trivial injury that was alleged.
“Q. Suppose, Doctor, he had gotten something in his eye and rubbed it?
“A. It would not cause the conditions that I mentioned.
“Q. Doctor, would your findings indicate or suggest any manner in *826 which this injury might have occurred ?
“A. No, I could not say. It had the appearance as though it had been struck with considerable force.
******
“Q. Are you convinced in your professional opinion that the injury was not caused in the manner in which he told you it occurred?
“A. I am convinced it was not caused in the manner in which he told me he sustained it.”
Dr. Frank Hull, a senior resident at the hospital where plaintiff was treated testified:
“ * * * * * *
“Q. Doctor, in your professional opinion, was the injury to his right eye caused in any manner by what the patient told you in his case history ?
“A. I couldn’t tell what caused it, but I couldn’t feel at that time that as trivial an accident as the patient described could have caused such a marked loss of vision as he had when I saw him.
“Q. Was he blind?
“A. Yes.
“Q. Could the injury that you saw be the result of a traumatic experience?
“A. It could, yes.
“Q. Could you render an opinion as to the degree of force that would have to be exerted against an eye to bring about that result? Would it be severe, or mild ?
“A. It would have to be, at least, moderate and would have to be directed to the globe itself.
“Q. Could it be caused by a piece of dust or trash falling into the eye?
“A. Not primarily.
“Q. Suppose the patient rubbed it?'
“A. No.
* * * * * *
“Q. If he had any foreign substances, in his eye, would you have been able to detect it?
“A. I believe I would have been able to.
“Q. Did you detect any?
“A. No.
“Q. Would you be able to detect-glass ?
“A. If not glass itself, I would be-able to detect any inflammatory reaction caused by glass.
“Q. Did you see any such inflammatory reaction?
“A. No.
“Q. In your opinion was this the result of a chemical burn ?
“A. No.
“Q. If I understand your testimony,, correct me if I am wrong, you are-not putting your finger on what caused this condition but you are telling us it was not caused in-the manner the patient told you, is-that correct of is it not?
“A. Yes, that is correct.”
Dr. Robert Azar, who examined plaintiff about 17 months after the accident, testified as follows:
* * * * * *
“Q. Now, when you examined his right eye, what if anything, did you find?
“A. I found he had total and permanent loss of vision in his right: eye.
“Q. In your opinion, what was the cause of this loss of vision?
*827 "“A. This loss of vision was a direct result of atrophy in his right eye.
■“Q. As a result of your examination, did you have occasion to use a Biomicroscope and ophthalmo-scope ?
'“A. Yes, I did.
■“Q. Did you tetect any foreign substance in the eye ?
■“A. I did not.
■“Q. If there had been any, would it have been possible to see it with these instruments?
“A. It would have been visible through our Biomicroscope.
“Q. You state you did not find any?
“A. There was none visible.
“Q. In your professional opinion, •could the condition be caused by his merely getting trash in his eye?
■“A. Not in my opinion. This type of
optic nerve injury could not result from trash in the eye.
■“Q. Could a severe blow cause such an injury?
■“A. Yes, it could.
“Q. Could this condition be a result of degenerative processes of the brain, completely unrelated to trauma ?
"A. Yes.”
From the evidence presented in this case the court is of the opinion that plaintiff did not suffer an injury compensable under the Workmen’s Compensation Law of the State; and we agree with the District Judge when he stated:
“ * * * the medical testimony proved beyond any reasonable doubt that the loss of sight in plaintiff’s eye ■could not have been caused by a foreign matter, going into plaintiff’s eye or by ais vigorously rubbing it, nor could it have aggravated a pre-existing condition. The medical testimony was conclusive that a severe trauma or a pre-existing condition caused the blindness, and not the foreign substance or debris.”
The cost of medical treatment for such injury as may have been caused by the spilling of the liquid into plaintiff’s eye is not at issue, since medical services, including a week’s hospitalization, were afforded plaintiff in spite of the fact that his trouble was never thought by his employer to have resulted from an industrial accident.
The judgment of the District Court is correct and is, therefore, affirmed.
Affirmed.